1

2

3

4             UNITED STATES DISTRICT COURT

5                  DISTRICT OF NEVADA

6                        * * *

7   UNITED STATES OF AMERICA,                Case No. 2:08-CR-64 JCM (GWF)

8                          Plaintiff(s),            **ORDER**

9        v.

10  STEVEN GRIMM, et al.,

11                         Defendant(s).

12

13         Following a remand order from the United States Court of Appeals for the Ninth Circuit

14  (the "Ninth Circuit"), Judge Hunt, who presided over the trial of this case, recused himself. The

15  undersigned received the case via random assignment of cases.

16         After additional discovery by the parties, on December 16 and 17, 2015, the court

17  conducted a hearing as ordered by the circuit panel. The defendants presented testimony from

    AUSA Sarah Griswold, David Mark, Kimberly Brown, former FBI SA Jayme Gentile, former

18  AUSA (now an assistant public defender) Brian Pugh, FBI SA Ryan Randall, IRS SA Nicholas

19  Rice, and FBI SA Sean Jones. The defendants failed to call two key witnesses. They did not call

20  Jennifer Wolff, as they were unable to subpoena her, or Mr. Channa Sedere (a seller to one of the

21  defendants' straw buyers), as his counsel informed them that he would invoke his Fifth

22  Amendment right rather than testify.[1] The government called one witness, FBI SA Douglas Berndt.

23         At the conclusion of the hearing, both parties informed the court that they did not desire

24  any further argument or briefing, and the matter stands submitted. In its opinion, the Ninth Circuit

25  _____

26         [1] Defense counsel also represented that they were not going to call Mr. Sedere because
    early in the hearing, on December 16, 2015, AUSA Griswold testified that had she known about
27  the potential *Brady* material before the *Grimm* trial, she would not have called Mr. Sedere at that
    trial because his testimony, which only went to count 1, was not essential. Defense counsel
28  represented to this court that there was no reason to call him at the evidentiary hearing after Ms.
    Griswold's testimony.

James C. Mahan
U.S. District Judge

1  found that on the record then before that court, there was not a fair probability that the jury would
2  have reached a contrary decision, even assuming all of the evidence disclosed on the record before
3  them was favorable.[2] *See United States v. Mazzarella*, 784 F.3d 532, 539 (9th Cir. 2015).

4     However, the appellate panel remanded the case for the district court to allow discovery,
5  conduct an evidentiary hearing, make factual findings to augment the record, and then consider
6  the *Brady* issues once more in light of its factual findings. *See id.* at 542. In concluding, the panel
7  posed several factual issues to be resolved in the remand hearing after appropriate discovery:

8     1.     "whether an unlawful search occurred;"

9     2.     "if so, what evidence was obtained by the government or derived from the unlawful
              search;"

10    3.     "and whether [Jennifer] Wolff was promised immunity in exchange for testimony
              against Mazzarella."

12 *Id.*

13     In addition, in a footnote, the Ninth Circuit instructed the court to consider the weight of
14  the final *Brady* disclosure, regarding Mr. Sedere. *See id.* at 537, n. 2. Finally, the Ninth Circuit
15  instructed the court that, "based on the result of these determinations, the district court should
16  consider anew whether the cumulative effect of the *Brady* disclosures and the suppression of
17  unlawfully obtained evidence requires vacating Mazzarella's convictions and ordering a new
   trial." *Id* at 542.

18     This court has considered the present inquiry to be in the nature of a fact-finding
19  investigation based on the legal authorities set forth in the decision remanding this case.
20  Accordingly, this court has relied on the legal concepts provided in that decision and sees no need
21  to cite the same authority back to the Ninth Circuit.

22     No official transcript has been prepared yet, and rather than delay a decision, the court has
23  relied upon its own electronic notes taken as the witnesses testified during the remand hearing,

24

25  _____

26     [2] The court stated: "On the record as it now stands, we agree with the district court's
27  conclusion that even assuming all of the disclosed evidence was favorable impeachment evidence,
    no prejudice resulted from the government's not disclosing the impeachment evidence . . . [and]
    there is not a fair probability that a jury would have reached a contrary result. The strength of the
28  prosecution's case, coupled with the relative weakness of the proffered impeachment evidence,
    leads us to conclude that there was no prejudice.

1  supplemented by a rough draft, unofficial transcript that the court used only to confirm its own

2  computerized record.

**I.      Legal Standard**

In determining whether to vacate any of defendants' convictions based on the cumulative effect of the alleged *Brady* violations, this court must employ a three-part test. "There are three elements of a Brady/Giglio violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the [s]tate, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Wilkes*, 662 F.3d 524, 535 (9th Cir. 2011).

"Prejudice is shown only if the withheld evidence is material to the defendant's guilt or punishment, such that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" United States v. Si, 343 F.3d 1116, 1122 (9th Cir. 2003) (quoting Strickler v. Greene, 527 U.S. 263, 280 (1999)). "A defendant has the burden of showing that withheld evidence is material." Id.

> [T]he touchstone of materiality is a reasonable probability of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether, in its absence, he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

Kyles v. Whitely, 514 U.S. 419, 434 (1995).

**II.     Discussion**

In total, the Ninth Circuit ordered this court to consider the cumulative effect of four disclosures related to government witness impeachment evidence under the standard recited above in light of the court's findings with respect to the Fourth Amendment inquiries posed by the panel and listed above. The court will first make factual findings with respect to the two Fourth Amendment inquiries. The court will then make a determination of whether Jennifer Wolff was promised immunity. Having made those findings, the court will make observations or findings with respect to the remaining *Brady* disclosures regarding impeachment evidence of Alicia Hanna, Kimberly Brown, and Channa Sedere. Finally, the court will consider the cumulative effect of all

of that on its confidence in the verdict against defendants, and offer an explanation for its conclusions.

       A.     *Was there an unconstitutional search implication the Fourth Amendment?*

Ms. Brown and Mr. Mark testified that they delivered documents variously described as a stack of thousands of pages or a pile about a foot high. Government agents SA Randall and SA Ryan denied receiving such documents at a coffee house or at the FBI office, contrary to Brown and Mark's testimony here. The agents testified further that they were not and are not able to locate any such documents in the FBI files. Defense counsel in this case were granted access to all FBI files and likewise were unable to discover any such plethora of documents as Brown and Mark testified they delivered. [3]

FBI SA Ryan Randall was the co-case agent with IRS SA Nicholas Rice for the Grimm-Mazzarella investigation and testified that Ms. Brown brought some documentation relating to her own investments to the initial meeting but did not produce any paperwork that the two had recovered surreptitiously from the Mazzarella offices either at that meeting or later.

Exhibit 8 at this hearing was a copy of the 1A folder at the FBI office in which SA Randall placed the initial documents from Mark and Brown. That exhibit contains only loan files relating to Ms. Brown, Albert Brown,[4] and David Mark, which they produced to the government at the initial interview in November 2007. He and other government agents denied receiving any wealth of documents from Brown and Mark.

Further, at the evidentiary hearing, Agents Rice and Randall both denied that they asked Ms. Brown and Mr. Mark to stay at DREI *and* that they asked the employees to make copies of documents on the agents' behalf. Brown and Mark again testified to the contrary. The Ninth Circuit has held that a private individual conducts an unlawful search on behalf of the government only if the government knew of or acquiesced in the intrusive conduct. *See United States v. Reed,* 15 F.3d 928, 931. Agents Randall and Rice testified that they would remember making such an extraordinary request because it would be both out of the ordinary and improper. Both agents

_____

[3] In fact, on the second day of the evidentiary hearing, December 17, 2015, the parties stipulated to the fact that there is no entry in the FBI file of any foot tall or 3,000 or 4,000 page stack of documents from Brown or Mark, and also, the fact that the FBI file does not indeed contain any such documents.

[4] Mr. Mark testified that Albert Brown is Ms. Brown's brother.

James C. Mahan
U.S. District Judge

indicated that they did not hear each other, or any other FBI or IRS employee, make such a request at the meeting. Again, they indicated that they would remember if they had heard such a request because of its unusual nature.

The only evidence related to whether agents Randall or Rice acquiesced in or knew of the search conduct on the record before the court is witness testimony. Beyond the evidentiary hearing testimony described above, Ms. Brown also testified during Mr. Mark's trial that she agreed to gather documents at the agents' request. SA Randall testified at the same trial that he did not recall receiving any documents taken from DREI. No extrinsic evidence exists, however, to assist the court in resolving the conflict between the agents' testimony and that of Mr. Mark and Ms. Brown.

A subsidiary issue here is whether Mark and Brown had either actual or apparent authority to search through and copy the files of their employer, Desert Real Estate Investments ("DREI"), Mazzarella's company. *See United States v. Ziegler*, 474 F.3d 1184, 1191 (9th Cir. 2007). Obviously, no employer is going to specifically authorize its employees to copy files and deliver them to the FBI in order to open a criminal investigation into the employer. Apparently, however, Brown and Mark had some actual or apparent authority to handle the files because they testified that they knew where the files were located, in the basement or on computers, and were able to copy those files and deliver them to the government.

At the remand hearing neither party introduced evidence of the extent of Brown and Mark's authority at DREI or what duties each performed for their employer. The only evidence on this point was the job title for each. Ms. Brown started at DREI as a "property manager" and then "went into the accounting department," while Mr. Mark held the position of "transaction coordinator." Thus, this court cannot find definitively what actual authority each of the employees had.

The court finds that, despite being given an opportunity for additional discovery related to the alleged unlawful search, defense has failed to produce any extrinsic evidence that the unlawful search occurred. Ms. Brown and Mr. Mark may have copied a large volume of documents from their employer, but there is no evidence that the government acquiesced in or knew of the copying. *See Reed*, 15 F.3d 931. A warrantless search implicating the Fourth Amendment occurred only if Ms. Brown and Mr. Mark copied the documents with government knowledge, at the very least. *Id.* Otherwise, this was simply a case of two employees stashing evidence of potentially illegal activity by their employer. The government agents vehemently,

and convincingly, deny such knowledge. Furthermore, defendants have failed to rebut the presumption that Ms. Brown and Mr. Mark's access and control over the documents implies that they have apparent, if not actual, authority to consent to a search of those documents.

Based on the foregoing, the court finds that no unlawful search implicating the Fourth Amendment occurred.

B.      *Was evidence or derivative evidence of the copied documents introduced at the Grimm trial?*

Even if an unconstitutional search had occurred, the witnesses at the evidentiary hearing testified that the government did not use any documents obtained from DREI at the trial *or* to obtain other evidence that was used at trial. Thus there was no showing at this hearing that the government used the Brown/Mark information to discover or obtain other evidence that the government did use at trial. In other words, no 'fruit of the poisonous tree' that should have been suppressed was introduced at trial.

The exhibits at trial were extensive, according to testimony from Brian Pugh. He further testified that all trial exhibits came from subpoenas to banks, title and escrow companies, as well as review of online government sources (such as the county recorder's office); in essence, from other sources besides Ms. Brown and Mr. Mark or the FBI search of defendant's offices and residences.

SA Rice, who prepared subpoenas for the US attorney's office, indicated that those were prepared based on information he had already gathered through public sources and the use of other informants, not on any info or documents obtained from Ms. Brown or Mr. Mark. Similarly, the affidavit he prepared in conjunction with the search warrant for the homes and offices of Ms. Mazzarella and Mr. Grimm relied on information known to the FBI and IRS before the November, 2007, meeting with Ms. Brown and Mr. Mark, and that those witnesses only corroborated information already in the possession of the agencies. SA Rice indicated definitively that he (a) did not base any subpoena upon any documents copied from DREI by Ms. Brown and Mr. Mark, (b) did not question any other witness based on such documents, and (c) did not reference or use any such documents in his preparation of the search warrant affidavit.

Only one trial document, exhibit 215 at the *Grimm* trial, came directly from DREI. This document was not turned over by Ms. Brown and Mr. Mark, but was obtained pursuant to the search warrant described above, as reflected in Remand Hearing Exhibit 3. Pugh prepared the

extensive exhibit list of 1,343 documents for the trial and specified the source of each exhibit, so his knowledge of the matter is credible. All other documents were obtained lawfully by subpoena based on information gathered by the FBI and IRS independently of any documents or testimony given by Mr. Mark and Ms. Brown.

The court therefore finds that no documents produced by Mr. Mark and Ms. Brown, including those that the parties acknowledge were produced at their initial November 2007 meeting, and no evidence derivative of any such documents, were used at the *Grimm* trial.

C.    *Was Jennifer Wolff promised immunity for testimony?*

When a district court evaluates the existence of an immunity agreement claimed by a witness, ordinary contract principles apply. *See United States v. Wilson*, 392 F.3d 1055, 1059 (9th Cir. 2004) (*amended on denial of reh'g*, No. 03-30089, 2005 WL 267831 (9th Cir. Feb. 4, 2005)). To determine whether an agreement existed, the court must determine whether an offer was made by the government and accepted by the witness. *See id.* Further, the witness' understanding or what the witness "thought he would be granted" does not change the character of the government's statements. *See id.* Instead, the court must determine whether the witness could reasonably believe that promises of immunity had been made. *See id.* (quoting *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir. 1990)).

Ms. Wolff's case is strikingly similar to that of the defendant in *Wilson*. *See id.* In both cases, the supposed beneficiary of an immunity agreement "understood" that they had been offered immunity, but could point to no offer or promise by a government agent. Here, the prosecution simply indicated to Ms. Wolff that she was not a target of the investigation. (*See* doc. # 637 at 12). In no way does this resemble the offer and acceptance required by *Wilson*. *See* 392 F.3d 1059. Ms. Wolff's testimony and statements to counsel that she "understood" this to be an immunity agreement are thus inapposite under *Wilson*. *Id.*

The defendants were unable to serve Ms. Wolff with a subpoena for this hearing, and she did not testify before this court. The defense attorneys did advise this court that Ms. Wolff has psychological problems, which may explain their inability to effectuate service.   Thus, the defendants introduced no new evidence bearing on any grant of immunity to her despite the opportunity for discovery. Based on her nonappearance and the record established at the *Marcianti* trial and on appeal, the court finds that, under *US v. Wilson*, no immunity agreement between Ms. Wolff and the government existed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.      *Kimberly Brown's Immunity Agreement*

Assistant Federal Public Defender Brian Pugh was formerly an assistant US attorney and was the lead attorney for the trial of this case. He testified that he was the government attorney primarily responsible for *Brady* and *Giglio* disclosures.

He was present at the November 2007 meeting with Ms. Brown and Mr. Mark in which David Mark inquired, "What about us?" Pugh testified that he responded, "As long as you keep cooperating, you have nothing to worry about."

He testified that this was only an oral assurance and not an immunity agreement that needed to be reduced to writing. His practice was to reduce immunity agreements, but not oral assurances, to writing. Under examination by Grimm's current attorney in this remand hearing, he testified that he did not consider that he was offering immunity to Mark and Brown, but in light of all the testimony, he was willing to assume that he was offering some sort of unofficial immunity.

If there was an immunity agreement in place, it was only an oral agreement, which illustrates the problem with an "understanding" that is not reduced to writing. To paraphrase Samuel Goldwyn, an oral agreement is not worth the paper it's not written on. The parties each will have their own understanding as to what they agreed to.

Mr. Pugh testified that what he meant is that *he* would not prosecute them so long as they cooperated. Unfortunately, everyone's recollection is colored by subsequent events, and without a formal written agreement, the court is unable to find that Ms. Brown was offered immunity by the government.

However, for purposes of this remand and in resolving the remaining issues, this court assumes hypothetically that there was in fact an enforceable immunity agreement with Ms. Brown and Mr. Mark. Based on the Ninth Circuit's opinion in this matter, the court will assume that the enforceable immunity agreement is favorable to the defense for the purposes of its cumulative *Brady* analysis. *See Mazzarella*, 784 F.3d 538.

E.      *The Channa Sedere disclosure*

Channa Sedere's attorneys advised the defendants that Mr. Sedere declined to appear and testify in the present hearing. Based on those representations, as well as Ms. Griswold's testimony that she would not have called Mr. Sedere at the *Grimm* trial if she had known of the evidence disclosed later, Mr. Sedere was not called as a witness at the evidentiary hearing. AUSA Griswold testified that she would not have called Mr. Sedere if she had known about the

James C. Mahan
U.S. District Judge

- 8 -

e-mails disclosed to defense counsel later because he was not an essential witness. No additional evidence was produced by any party on this issue.

Based on the limited record before the court, it finds that the e-mails disclosed were potentially favorable to the defense as impeachment evidence. Nevertheless, as discussed in more detail below, the failure to disclose them did not prejudice the defense because the witness, who testified only to a single count, was not essential to prosecution's otherwise strong case.

F.      The Alicia Hanna e-mail exchange

The only evidence that either side presented on this issue at the remand hearing was Mr. Pugh's testimony about discovering the emails. Exhibit 2 at the evidentiary hearing was his affidavit disclosing the exchange of emails between Ms. Hanna and FBI SA Michael Rawlins. The two emails are attached to Exhibit 2 and reflect SA Rawlins' thanks for her assistance and her request to let her know of any openings for employment in Charlotte, apparently his then currently assigned FBI field office.

No party provided any evidence indicating that this exchange was anything more substantial than appears from the emails themselves. There was no evidence at the evidentiary hearing indicating any bias or prejudice on her part. In its opinion remanding this matter, however, the Ninth Circuit concluded that the evidence was favorable to the defendants. *See Mazzarella,* 784 F.3d 538.

F.      The cumulative effect of the undisclosed material

With respect to the inquiries posed by the appellate panel, this court found that: (1) no unlawful search implicating the Fourth Amendment occurred; (2) no documents copied or produced to the government by Ms. Brown and Mr. Mark were offered at the *Grimm* trial or used as the basis for discovery of other evidence offered at the *Grimm* trial; and (3) Jennifer Wolff was not promised immunity in exchange for testimony at the *Grimm* trial.

The court found further that, to the extent the Channa Sedere e-mail exchanges disclosed by prosecution on October 20, 2014, constitute impeachment evidence, those e-mails are favorable to defendants. The court also relies on the Ninth Circuit's conclusion that evidence of the Kimberly Brown immunity agreement and Alicia Hanna e-mail exchange were favorable to the defense. With respect to those pieces of evidence only, the court finds that the first element of the three-prong *Brady* test is satisfied. *Wilkes,* 662 F.3d 535. Because the court found that there was no unconstitutional search, no DREI documents or evidence derivative of them were introduced at

James C. Mahan
U.S. District Judge

trial, and no immunity agreement existed between Ms. Wolff and the government, evidence related to those inquires *was not* favorable to defendants. Therefore, the first element of the *Brady* test is not satisfied with respect to that evidence, and it will not be considered in the court's analysis of the cumulative effect of defendants' challenges.

Applying the remaining *Brady* factors, the court finds, based on the record established before the evidentiary hearing, that the government suppressed the evidence related to Alicia Hanna's e-mails and Kimberly Brown's immunity agreement. Neither piece of evidence was disclosed to defense counsel before the *Grimm* trial, despite the fact that it was known by either prosecution or federal law enforcement. *See Wilkes*, 662 F.3d 535; *Jackson v. Brown*, 513 F.3d 1057, 1072 (9th Cir. 2008). Similarly, the Channa Sedere e-mails appear, based on Ms. Griswold's testimony, to have been in the possession of the FBI, but were not disclosed to defense counsel at that time of the *Grimm* trial. The court finds that evidence of those e-mails was also suppressed for purpose of the *Brady* analysis. *Wilkes,* 662 F.3d 535.

The third and final element of the conjunctive *Brady* test set forth in *Wilkes* is "prejudice [to the defense] must have ensued." *Wilkes,* 662 F.3d 535. The element of prejudice hinges on the "materiality" of the evidence suppressed. "Suppressed evidence is consider prejudicial (or material) if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Doe*, 705 F.3d 1134, 1152 (9th Cir. 2013) (quoting Paradis v. Arave, 240 F.3d 1169, 1176 (9th Cir. 2001)). A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of a trial. United States v. Bagley, 473 U.S. 667, 682 (1985). The materiality of suppressed evidence "is considered 'collectively, not item by item.'" Kohring, 637 F.3d at 902 (quoting Kyles, 514 U.S. at 436).

The court finds that no "prejudiced ensued" towards the defendants based on the government's failure to disclose the Hanna, Brown, and Sedere materials. *Wilkes,* 662 F.3d 535. Having considered the cumulative effect of those materials on its confidence in the outcome of the *Grimm* trial, in light of its findings regarding the Fourth Amendment issue and Ms. Wolff, the court does not find a reasonable probability that disclosure of the materials would have resulted in a different outcome at trial. *See Bagley,* 473 U.S. 682; *Mazzarella,* 784 F.3d 542; *Doe*, 705 F.3d 1152.

**James C. Mahan**
**U.S. District Judge**

- 10 -

The court has answered each of the appellate panel's factual inquiries in the negative. Thus, the discovery conducted pursuant to the evidentiary hearing with respect to those inquiries produced no evidence that weighs on this court's cumulative analysis. Further, the court agrees with AUSA Griswold's testimony that the Sedere materials, while favorable, were not material or essential to the prosecution's case. Mr. Sedere only testified to a single count. Ms. Mazzarella and Mr. Grimm were convicted on 11 and 13 other counts respectively. Mr. Sedere could testify only to his role as a seller of one of Ms. Mazzarella's "investment" properties. He provided very little insight of the workings of the conspiracy, the falsity or materiality of statements, or the means by which the conspiracy was carried out. Considering this cumulatively with the Hanna and Brown evidence already considered by the appellate panel, the court echoes the Ninth Circuit's findings about the strength of the prosecution's case against the defendants:

> More than 50 witnesses testified, and there were more than 1300 exhibits introduced at trial. Skip Young testified extensively about Mazzarella's knowledge of, and involvement in, the use of false information in the loan applications. Shauna Labee offered testimony that she had signed blank loan applications in Mazzarella's presence and at Mazzarella's urging. While both Young and Labee were co-schemers testifying in exchange for deals, their detailed testimony, coupled with the ample evidence of Mazzarella's involvement in all the other aspects of the business plan, suggests that even after accounting for the disclosures, on the record before us, there is not a fair probability that a jury would have reached a contrary result. The strength of the prosecution's case, coupled with the relative weakness of the proffered impeachment evidence, leads us to conclude that there was no prejudice.

*Mazzarella*, 784 F.3d 539.

The strength of the prosecution's case described above, paired with the non-essential nature of the Sedere materials considered here in the first instance, the court's factual rejection of defendants' Fourth Amendment and Jennifer Wolff challenges, and the lack of new evidence presented to the court, despite a discovery period before the evidentiary hearing, convince this court that confidence in the guilty verdicts is not undermined by defendants' disclosure challenges.

The court will deny defendants' motions for new trial.

**III.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Steven Grimm's motion for new trial (doc. # 525) be, and the same hereby is, DENIED.

James C. Mahan
U.S. District Judge

1    IT IS FURTHER ORDERED that defendant Eve Mazzarella's motion for new trial (doc.
2  # 528) be, and the same hereby is, DENIED.
3    IT IS FURTHER ORDERED that defendant Eve Mazzarella's motion for new trial (doc.
4  # 555) be, and the same hereby is, DENIED.
5    DATED December 23, 2015.
6
7    UNITED STATES DISTRICT JUDGE
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**James C. Mahan**
**U.S. District Judge**

- 12 -