Jim Hoffman
Nevada State Bar 13896
PO Box 231246
Las Vegas, NV 89105
(702) 483-1816
Jim.Hoffman.Esq@gmail.com
Attorney for Steven Grimm

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>vs.<br><br>STEVEN GRIMM,<br><br>Defendant | Case No.: 2:08-cr-00064-JCM-EJY<br><br>**REPLY TO GOVERNMENT'S OPPOSITION TO COMPASSIONATE RELIEF MOTION** |

STEVEN GRIMM, by and through his counsel JIM HOFFMAN, ESQ., hereby files this Reply to the Government's Opposition [ECF 880] Motion to Modify for Compassionate Relief [ECF 876]. This Reply is based on 18 U.S.C. § 3582, as well as the attached Argument and all other pleadings on file in this case.

DATED: 6/23/22

/s/ Jim Hoffman
Jim Hoffman, Esq

VS - 1

# ARGUMENT

As discussed in the Compassionate Relief Motion [ECF 876, "Motion"], Steven Grimm is 59 years old, with diabetes, high blood pressure, and an almost-obese BMI, all of which are risk factors that seriously exacerbate the risks that he faces from COVID in a correctional environment. Combined with the non-violent nature of his offense, this makes him a good candidate for compassionate relief. In its Opposition, the Government makes a number of arguments against relief. However, as discussed below the Court should still grant relief and Mr. Grimm respectfully asks it to do so.

The Government's first line of argument has to do with the existence of vaccines. Since vaccines against COVID are now an option, the Government argues that COVID is no longer an "extraordinary and compelling reason" to grant relief to someone with Mr. Grimm's various comorbidities. The Government further cites a number of cases to this effect. Opposition [ECF 880] pp. 6-8.

There are a few problems with the Government's argument. First, the cases that the Government cites do not squarely hold that COVID is no longer an extraordinary and compelling reason for relief. Instead, the Government's cases hold that if a district court decides to deny relief on this ground, that is not an abuse of discretion. A district court such as this one can still decide to grant relief (as it did in Ms. Mazzarella's case) and that is a perfectly defensible decision too. And as a matter of practice, if the Government loses and a defendant gets relief, the Government (laudably) does not regularly appeal such decisions. So of course most of the appellate decisions on the subject will be upholding denials of relief – but that only means that this Court *could* deny relief, not whether it *should*.

Another problem with the Government's argument is the timing of the appellate cases it cites. These are largely recent – some are from the first half of

VS - 2

2022 and the others from 2021.  But of course it takes time for a case to make its way through the appeals process.  A case that the Ninth Circuit decided in the first half of 2022 is likely going to be based on a motion that was originally brought substantially earlier, perhaps in the first half of 2021.  The record in such a case is going to be based on what was happening with COVID and vaccines at that time.  But COVID changes over time, which renders fact-based holdings out of date.

Vaccines were much more effective against COVID when they were first available to prisoners in early 2021.  As detailed in the Motion, they are substantially less effective now.  A factual holding based on the science that was current a year and a half ago is substantially vitiated now – the omicron subvariant of BA.2 is much more resistant to vaccines than the alpha or even delta variants.  This Court should base its holding on the current state of the science, not on science from a year ago that appellate courts are only now ruling on.

The Government's second line of argument relates to Mr. Grimm's religious beliefs against the use of vaccines that were developed with the use of fetal stem cells.  The Government suggests that Mr. Grimm is being insincere or that his beliefs are "selectively exercised" because he has taken other medications that, the Government alleges, were also "tested using stem cells." Opposition, pp. 8-9.

The Government's second argument is flawed for two reasons.  First, the Government is facially misreading Mr. Grimm's religious objections.  In his letter, he expresses his objection to the use of stem cells in the confirmation phase of two vaccines and the actual production of a third vaccine.  Letter pp. 2-3.  The confirmation phase is a safety phase that a vaccine necessarily has to go through, and of course production is also a core, necessary part of vaccine development.  Fetal stem cells were centrally involved in the production of the vaccines.  By contrast, the Government's source points to instances where drugs like aspirin

VS - 3

happened to be tested on fetal stem cells after they were already in existence.[1] Mr. Grimm's objection is to the use of fetal tissue "in the development" of the vaccines – he is not insincere for taking aspirin, just because at some point in history some scientist has wondered what would happen if aspirin were given to stem cells. The Government's argument is fundamentally flawed in this sense.

More broadly, caselaw is clear that "courts must not presume to determine… the plausibility of a religious claim." *Employment Division, Dept of Human Resources v. Smith*, 494 U.S>872, 887 (1990). "[J]udicial inquiry into the sincerity of a person's religious belief must be handled with a light touch, or judicial shyness. Examining religious convictions any more deeply would stray into the realm of religious inquiry, an area into which we are forbidden to tread." *Davis v. Fort Bend County*, 765 F.3d 480, 486 (5th Cir. 2014) (quotations and citations omitted).

While this Court can examine the sincerity of Mr. Grimm's beliefs, the Government's Opposition goes beyond that. The Government is making a substantive allegation that Mr. Grimm is a hypocrite because his belief (vaccine development impermissibly used fetal stem cells) conflicts with his use of other medications that have been tested by third parties on stem cells. This is wrong on its own terms as discussed above. But it is also wrong because the Government is inviting the Court to make decisions about the substance of Mr. Grimm's beliefs,

---

[1] Aspirin is derived from willow bark, which the ancient Greek physician Hippocrates prescribed 2000 years ago. Aspirin itself was first produced in the 1800s. Both of these dates are well before medical technology could isolate fetal stem cells.

VS - 4

which the Court may not do.[2] The Court should decline the Government's request and disregard this line of argument.

The Government's next argument is its assertion that there are currently no positive COVID cases at FCI Texarkana, which demonstrates the BOP's good handling of the pandemic. Opposition p. 9. That may have been true when the Government wrote its opposition, but a week later there are two staff with confirmed positive test results.[3] In addition, according to the BOP's website, there are currently only 136 pending tests for a population of 144,000 federal inmates nationwide; there are zero pending tests for Texarkana despite the two positive staff.[4] This suggests that the BOP is undertesting and that the Government's numbers should not be given a substantial amount of deference. In Texas as a whole, COVID cases have increased by 17% in the past two weeks and deaths have increased by 13% - not nearly as bad as earlier surges, but numbers that would still be shocking in any other context.[5] Given the problems with FCI Texarkana's handling of the pandemic (many of which are intrinsic to the prison's physical structure and none of which the Government challenges in its Opposition), these numbers do not support the denial of relief.

---

[2] For an obvious example, Mr. Grimm is a Protestant, while the Government's source was written by a Catholic priest. If a popular Catholic doctrine says that an attenuated connection via third-party testing on stem cells is sinful, does that mean that Mr. Grimm is a hypocrite for not following that same doctrine? That is precisely the sort of personal theological question that this Court should not be deciding.
[3] Data as of 6/23/22. https://www.bop.gov/coronavirus/
[4] *Id.*
[5] Data as of 6/23/22. https://www.nytimes.com/interactive/2021/us/texas-covid-cases.html

1    The Government's final argument is that the sentencing factors support a
2 denial of relief.  The Government primarily argues[6] that Mr. Grimm has not served
3 enough of his sentence yet, and that this Court should deny relief as a result.[7]
4 However, as discussed in the Motion, courts have repeatedly granted relief to
5 prisoners with life sentences, where the denominator is infinite and so the inmates
6 involved have served much smaller percentages of their sentence than Mr. Grimm.
7 And more broadly, every federal judge sentences every inmate to a sentence that is
8 calibrated to their danger and moral culpability – it is required by law.  Yet
9 Congress still passed the First Step Act, directing judges to commute those
10 sentences in some circumstances.  The Government's position that an unserved
11 sentence bars relief is contradictory to the plain text and intent of the law.  Thus,
12 this argument cannot be a bar to relief either.
13    Steven Grimm was accused of serious crimes, and given a commensurately
14 serious sentence as a result.  But the Court did not give him a death sentence.
15 Given his age, his medical conditions, and the still-present threat of COVID, if

---

[6] The Government also points out that the offense conduct in this case not only harmed banks but also "straw buyers," and accuses Mr. Grimm of being indifferent to the damage caused to their credit scores.  Opposition, p. 11.  The Government is correct that the Motion elides this, and counsel apologizes for his oversight; however, this should not be imputed to Mr. Grimm.  The Motion's broader point (if a multiple murderer can get relief so can an offender who only caused indirect economic damage) remains, however.

[7] A wrinkle here is that the Opposition characterizes Mr. Grimm as having served 1/3 of his sentence (8 years out of 25) while the Motion characterizes Mr. Grimm as halfway through his sentence (his release date is in 2035, 13 years away).  These are both technically correct; the discrepancy is due to good time credits.  Mr. Grimm submits that since good time credits apply to every federal prisoner, they are baked into the calculation that every court makes under the First Step Act and so the Court should take his perspective over the Government's.

Steven remains in custody there is a real possibility that this will happen anyway. Given this possibility, he respectfully asks the Court to grant relief.

DATED: 6/23/22

/s/ Jim Hoffman

Jim Hoffman, Esq